**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DEMETRIUS POUNCY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-1840 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff's petition for attorneys' fees and costs, and in the alternative, for sanctions [72-1] and Plaintiff's bill of costs [68]. For the reasons stated below, the Court awards Plaintiff $64,462.50 in attorneys' fees, plus prejudgment interest from August 6, 2016. The Court further awards Plaintiff $981.70 in taxable costs and $986.70 in nontaxable costs. The Court denies Plaintiff's request for sanctions. The parties are directed to confer regarding the appropriate calculation of prejudgment interest and submit a proposed order incorporating that calculation along with the other amounts stated above no later than December 20, 2017.

**I.     Background**

Plaintiff seeks $91,225.00 in attorneys' fees and $2,202.40 in taxable and nontaxable costs pursuant to an accepted Rule 68 offer of judgment, which allowed judgment to be taken against Defendants in favor of Plaintiff in the amount of $15,001 plus reasonable attorneys' fees and costs. In the alternative, Plaintiff also seeks to recover his attorneys' fees as a sanction for Defendants' failure to produce a relevant Tactical Response Report ("TRR") prior to June 2, 2016. Finally, Plaintiff requests over $22,000 in "fees on fees"—that is, attorney time expended to litigate this fee dispute.

Plaintiff initially filed this § 1983 lawsuit *pro se* on February 1, 2015 against Detective John Doe, Detective Timothy O'Brien, and the City of Chicago. Plaintiff alleged that on August 27, 2013—after Plaintiff was arrested and charged with harassing a witness [74, at 4]—Detective John Doe used excessive force on Plaintiff by slamming him head-first into a wall. [1.] Plaintiff further alleged that Detective Timothy O'Brien failed to intervene.[1] [1.] On May 14, 2015, the Court recruited counsel to represent Plaintiff in this matter. [9.] Recruited counsel filed an amended complaint [8] and a motion to conduct expedited discovery to identify the unnamed defendant before the expiration of the two-year statute of limitations [13], which the Court granted. [17.]

Plaintiff then sought documents aimed at identifying the unnamed detective. Specifically, Plaintiff requested files with the event identification number RD HW368940/CB18731820, which was the event identification number associated with the harassment charges against Plaintiff. Plaintiff also requested any "Tactical Response Reports and/or Officer Battery Reports" regarding Plaintiff between August 26, 2013 to August 28, 2013, among other documents. [72-4.] Defendants emailed Plaintiff on July 22, 2015, indicating that they were able to locate the area file, but that "the request for any TRRs came back negative." [72-22.]

Because Plaintiff was not able to identify the unnamed defendant from the documents produced by Defendants before the statute of limitation expired, Plaintiff filed a second amended complaint on August 26, 2015, naming 45 Chicago detectives who were present and on-duty when the alleged incident occurred. [31, at ¶1; 35.]

On September 23, 2015, nearly a month after Plaintiff filed his second amended complaint, the city produced a case incident report that identified Detective Patrick Ford as the detective

<hr />

[1] Plaintiff's original complaint named "Detective O Bryant" as a defendant [1], but his first amended complaint identified Detective Timothy O'Brian as the detective who allegedly failed to intervene. [18.]

involved in the incident with Plaintiff. Plaintiff filed a third amended complaint on October 14, 2015 identifying Patrick Ford as the detective who allegedly used excessive force against Plaintiff [40] and voluntarily dismissed the other detectives named solely for the purpose of preventing the statute of limitations from expiring while Plaintiff continued to search for the detective involved in the incident with Plaintiff [39].

The parties continued discovery. Plaintiff served requests for production on Ford, in which Plaintiff requested, among other documents, "[a]ll documents created as a result of the August 27, 2013 arrest of and use of force against Plaintiff, including but not limited to arrest reports, general case reports, Tactical Response Reports, Officer Battery Reports, Injured on Duty Reports, use of force reports, lock-up reports, case incident reports or any other documents." [72-20, at 5.] Defense counsel served its response to this request on February 11, 2016, but did not produce the TRR from the incident involving Ford until June 2, 2016. Defendants' briefing indicates that the failure to earlier produce the relevant TRR was due to a misunderstanding regarding the event number assigned to the TRR. Specifically, Defendants used the event number from the assault charges against Plaintiff when they initially searched for a TRR. Defendants attach a copy of the search record from this initial search to their response brief. [90-6.] When Plaintiff served additional discovery requests in May of 2016, Defendants conducted a broader TRR search that produced the TRR relating to the incident between Ford and Plaintiff, which had a different event identifier. [90-11.] Defendants produced the TRR on June 2, 2016.

On June 7, 2016, Defendants sent Plaintiff a Rule 68 offer of judgment—which Plaintiff accepted that day—"in the amount of [$15,001] plus reasonable attorney's fees and costs as to Plaintiff accrued as of * * * June 7, 2016, in amount to be determined by the Court." [62-1, at ¶1.]

On June 15, 2016, a little over a week after Plaintiff accepted Defendants' offer of judgment, Plaintiff's counsel wrote a letter to defense counsel requesting $91,225.00 in attorneys' fees and $2,202.40 in costs.   [72-23.]   In that letter, Plaintiff asserted for the first time that "the City knew that * * * Ford beat up [Plaintiff] * * * but did everything in its power to keep Ford's identity a secret," and indicating that such conduct was sanctionable.   [72-23, at 1.]   The parties exchanged further correspondence discussing Plaintiff's allegation that Defendants engaged in sanctionable conduct and also seeking to reach an agreement regarding the amount of attorneys' fees and costs that should be awarded to Plaintiff, as required by Local Rule 54.3(d).

With respect to the attorneys' fees dispute, the parties were unable to reach an agreement regarding (1) the applicability of the Prison Litigation Reform Act, (2) the reasonable hourly rate for Plaintiff's counsel, and (3) whether the time and nature of Plaintiff's counsel's billing was subject to objection.   The parties also disagreed about the amount of costs Plaintiff was entitled to recover pursuant to the offer of judgment.   As a result of these disputes, Plaintiff filed the petition for attorneys' fees and costs, and in the alternative, for sanctions [72] currently pending before this court.

Plaintiff seeks $91,225.00 in attorneys' fees and $2,202.40 in taxable and nontaxable costs. In the alternative, Plaintiff asks that the Court award its attorneys' fees as a sanction for Defendants' failure to produce the TRR before June 2, 2016, claiming that "a large portion of the attorney's fees accumulated would not have been accumulated had Defendants produced [the] easily attainable routine police report that they claimed for nearly a year did not exist."   [72-1, at 1.]   Plaintiff also requests over $22,000 in fees on fees.

## II.     Analysis

The Court begins by noting that a "request for attorney's fees should not result in a second major litigation."   *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).   This is especially true in the context of Rule 68 offers of judgment, which are designed "to encourage settlement and avoid litigation."   *Webb v. James*, 147 F.3d 617, 620 (7th Cir. 1998) (citing *Marek v. Chesny*, 473 U.S. 1, 5 (1985)).   In this case, however, the parties filed nearly 50 exhibits and submitted nearly 500 pages of documents in connection with the fee petition pending before the Court.   Despite these extensive submissions, the Court found that the parties left many issues undeveloped or underdeveloped [92] and requested supplemental briefing on certain issues.   [See 94.]   The Court recognizes that the fee petition pending before the Court involves more complicated legal issues than the typical fee petition.   Still, many of the fee disputes in this case could have been avoided had the parties not simply left it to the Court to determine the amount of attorneys' fees and costs Plaintiff is entitled to receive.

### A.     Attorneys' Fees Pursuant to the Offer of Judgment

Turning to the merits of Plaintiff's fee petition, pursuant to the offer of judgment, Plaintiff is entitled to "reasonable attorney's fees and costs accrued as of **June 7, 2016**, in an amount to be determined by the Court."   [63, at 1.]   Initially Defendants argued that the Prison Reform Litigation Act ("PLRA") capped the amount of attorneys' fees Plaintiff could recover in conjunction with the accepted offer of judgment.   [90, at 9-10.]   After the Court requested supplemental briefing, however, Defendants abandoned their argument that the PLRA limits the amount of attorneys' fees Plaintiff can recover.   [95, at 2.]

The starting point for determining Plaintiff's "reasonable attorney's fees" is the lodestar,[2] which is the "the hours reasonably expended multiplied by the reasonable hourly rate." *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012). The Court has an obligation to "exclude from this initial fee calculation hours that were not 'reasonably expended'" on the litigation. *Hensley*, 461 U.S. at 434. However, the Court is "not obligated to conduct a line-by-line review of the bills to assess the charges for reasonableness." *Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 738 (7th Cir. 2010). The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed. *Id*. at 433.

Once the lodestar is determined, the Court must determine whether it is appropriate to adjust the lodestar. *Sommerfield v. City of Chicago*, 863 F.3d 645, 650 (7th Cir. 2017). A downward adjustment may be appropriate where a plaintiff achieves "only partial or limited success." *Montanez v. Simon*, 755 F.3d 547, 556 (7th Cir. 2014) (quoting *Hensley*, 461 U.S. at 434). On the other hand, an upward adjustment may be appropriate where the Plaintiff achieves "[e]xtraordinarily good results." *Sommerfield*, 863 F.3d at 650 (citing *Baker v. Lindgren*, 856 F.3d 498, 503 (7th Cir. 2017)). If a district court elects to reduce a fee award, it must "provide a 'concise but clear explanation of its reasons.'" *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001) (quoting *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999)). "In other words, the court cannot simply 'eyeball the fee request and cut it down by

---

[2] Plaintiff requests reasonable attorneys' fees pursuant to Rule 68 and general contract law. In the alternative, Plaintiff requests reasonable attorneys' fees pursuant to 42 U.S.C. § 1988. To the extent the plain terms of the accepted offer of judgement differ from the analysis for determining reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, the Court follows the plain terms of the accepted offer of judgment. *Webb v. James*, 147 F.3d 617, 620 (7th Cir. 1998) ("[C]ourts use contract principles to interpret offers of judgment." (citations omitted)). Regardless, the parties agree that the lodestar method is the correct method for calculating the amount of reasonable attorneys' fees Plaintiff can recover in this case.

an arbitrary percentage because it seemed excessive to the court.'"  *Id.* (quoting *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1314 (7th Cir. 1996)).

Here, the Court determines that the lodestar is $64,462.50.  This figure is presumptively reasonable, and the Court does not find any basis for either an upward or downward adjustment. Indeed, in their supplemental briefs, both parties agree that an adjustment to the lodestar would be inappropriate.  [95, at 7-8; 96, at 13.]  Because Plaintiff is not entitled to fees on fees, the Court awards Plaintiff $64,462.50 in reasonable attorneys' fees.

### 1.    Hourly Rates

The first step in determining the lodestar is to assess the reasonableness of the attorneys' hourly rates.  "A reasonable hourly rate is based on the local market rate for the attorney's services."  *Montanez*, 755 F.3d at 553 (citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011)).  "The best evidence of the market rate is the amount the attorney actually bills for similar work, but if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases."  *Id.* (citing *Johnson v. GDF, Inc.,* 668 F.3d at 933). "The party seeking a fee award bears the burden of establishing the market rate for the work; if the lawyers fail to carry that burden, the district court can independently determine the appropriate rate."  *Id.*

Here, Plaintiff seeks rates of $75 per hour for paralegals who assisted on the matter, $550 per hour for attorney Brendan Shiller, and $350 per hour for attorney Mary Grieb.  Defendants do not dispute the reasonableness of the $75 per hour paralegal rate.  However, Defendants do contest the $550 hourly rate for Mr. Shiller and the $350 hourly rate for Ms. Grieb, arguing that the

recoverable hourly rate for Mr. Shiller and Ms. Grieb should be $385 per hour and $175 per hour, respectively.[3]

### i.      Brendan Shiller's Hourly Rate

Plaintiff fails to establish that $550 per hour is the market rate for the work Mr. Shiller performed in this case.  Plaintiff does not submit an affidavit from Mr. Shiller discussing his qualifications or the rate he charges for work on civil rights cases.   Other evidence submitted by Plaintiff does not support Mr. Shiller claimed rate of $550 per hour.

To begin, Plaintiff offers a collection of retainer agreements involving markets other than civil rights cases.   For example, Plaintiff submits retainer agreements for matters involving environmental law issues [72-17, at 84], contractual issues [72-17, at 84], political campaigns [76-1, at 21], and business license violations [72-17, at 64], among other markets.   Plaintiff has not offered any evidence establishing that these markets are relevant for determining the appropriate market rate for Mr. Shiller's work in this case.   The Court will therefore disregard these retainer agreements.   *Montanez*, 755 F.3d at 554 (holding that the district court was free to disregard fee agreements involving different markets); see also *Moriarty v. Svec*, 233 F.3d 955, 966 (7th Cir. 2000) ("The district courts discretion in determining what is a reasonable attorney's fee applies to its determination of what constitutes a market.").

---

[3] Defendants also contend that Plaintiff should not be able to recover any fees for work performed by Mr. Shiller because he was not appointed as counsel by this Court.   Defendants do not cite any authority supporting their contention that Mr. Shiller's fees are not recoverable, and it is commonplace for recruited lawyers to be assisted by colleagues within the same firm as the circumstances of the case dictate.   In many instances, recruited counsel (from the Trial Bar) are more experienced lawyers who quite sensibly delegate tasks to more junior lawyers in the interest of efficiency or so that the more junior lawyers get more experience working on federal cases.   Here, the opposite was true:   recruited counsel (again sensibly) sought assistance from more senior lawyers in her firm.   In any event, Defendants agreed to pay *Plaintiff's* reasonable attorneys' fees, not just fees for work performed by Ms. Grieb.   Thus, Plaintiff is entitled to recover all of his reasonable attorneys' fees, including fees for work performed by Mr. Shiller.

With respect to the criminal retainer agreements submitted by Plaintiff, Plaintiff offers the affidavit of Jared S. Kosoglad, which represents that "attorneys' billing rates in criminal defense and civil rights work are similar" because "[t]he fields themselves often overlap." [72-16, at 4, ¶15.] The Court does not find this conclusory representation persuasive evidence that the market rate for criminal work is the same as the market rate for civil rights work. The Court will therefore disregard the criminal retainer agreements as well.

Plaintiff also submits a number of retainer agreements relating to § 1983 cases. But these agreements are structured as contingency agreements, which are of little help in determining the reasonableness of hourly rates charged by an attorney. *Pickett*, 664 F.3d at 640 (recognizing "the difficulty of determining the hourly rate of an attorney who uses contingent fee agreements"); *Montanez*, 755 F.3d at 554 ("The judge did not abuse her discretion by giving little weight to [contingency] agreements as evidence of market hourly rates for the attorneys' services."). Plaintiff asserts that these agreements are not "strictly speaking, contingency agreements." [96, at 7.] Plaintiff admits, however, that these agreements "have a functional contingency element to them" and that "counsel are not usually paid" under these agreements "unless or until there is a settlement or judgment." [96, at 7.] Although the § 1983 retainer agreements submitted by Plaintiff are not labeled contingency agreements, the agreements state that if "no recovery of any type is had, then Shiller Preyar Law Offices agrees to forego any active collection of fees and costs." [See, *e.g.*, 72-17, at 1, §2.3.] The agreements also provide that "Shiller Preyar [may] take (entirely at their option) 40% (percent) of the entire recovery the client obtains [if] that number is higher than the lodestar." *Id*. at 2, §2.4. Because Shiller Preyar agrees to forego the collection of fees until plaintiffs recover, the § 1983 retainer agreements are functionally contingency agreements. *City of Burlington v. Dague*, 505 U.S. 557, 561 (1992) (recognizing

that fees are contingent when "the obligation to pay depends on a particular result's being obtained"). Indeed, a court looking at a similar retainer agreement submitted by Shiller Preyar in another fee dispute concluded that such agreements constitute contingency agreements. *Montanez v. Chicago Police Officers Fico (Star No. 6284), Simon (Star No. 16497)*, 931 F. Supp. 2d 869, 876 n. 3 (N.D. Ill. 2013).

Furthermore, the § 1983 retainer agreements provided contain contradictory language regarding the rates to be charged to the clients. For example, Section 2.1 of the § 1983 retainer agreement for Melanie Rocha states:

> The CLIENT agrees to pay the hourly rates as detailed in Addendum A to this contract. The Client acknowledges that the partners in Shiller Preyar generally charge $500 an hour as their normal market rate for litigation. However, because this particular case involves issues of public interest, the partners have agreed to reduce their hourly rate.

[72-17, at 1.] Addendum A to the contract lists the rates for the partners at $500. It is therefore unclear whether the client agreed to pay the rates listed in the addendum or some reduced rate not identified in the retainer agreement. The § 1983 retainer agreements are therefore of little help in establishing the market rate for the services provided by Mr. Shiller in similar cases.

Plaintiff also submits invoices from a § 1983 lawsuit *McCadd v. Village of Bolingbrook, et al.,* Case No. 1:14-cv-08496 (N.D. Ill. filed Oct. 28, 2014), which indicate that Shiller Preyar charged plaintiff in that matter $500 an hour for the work Mr. Shiller performed from July 2014 through June 2016. [72-17, at 17-63.] However, the invoiced attorneys' fees continuously accumulated without any payment from the client reflected on the invoices. [72-17, at 15-63.] And the retainer agreement from that case was structured as a contingency agreement, as discussed above. Thus, these invoices are not helpful in determining the appropriate market rate for Mr. Shiller's work in this case.

Plaintiff also submits the Expert Report of Bruce M. Meckler, Esq. (the "Meckler Report") offered by the law firm Loevy & Loevy to justify attorneys' fees sought in *Young v. County of Cook*, Case No. 1:06-cv-00552 (N.D. Ill. filed Jan. 30, 2006). The Meckler Report, however, does little to justify the reasonableness of the attorneys' fees sought in this case. The report was submitted in connection with a complex class action involving a different law firm before a different court in this district. [72-15.] Furthermore, the portion of the Meckler Report relied upon by Plaintiff discusses "***projected rates*** for attorneys specializing in ***complex commercial litigation*** for 2011," [72-15, at 9 (emphasis added)], not actual rates for attorneys in civil rights cases. The Meckler report therefore has no bearing on the reasonableness of the rates Plaintiff's counsel seeks in this case and therefore is disregarded.[4]

Plaintiff also submits the affidavits of two attorneys, but these affidavits also fail to establish Mr. Shiller's claimed hourly rate. [72-16.] The affidavit of Anthony Burch does not identify the hourly rate the affiant charges for civil rights work, but instead identifies his hourly rates for criminal defense work and family law work, which are irrelevant here. *Id*. at 2, ¶4. The affidavit of Jared S. Kosoglad indicates that he was awarded $225 per hour for his work on a civil rights case, which was his first case as a licensed attorney. *Id*. at 3-4, ¶6. Mr. Kosoglad's affidavit also cites to a November 17, 2014 decision concluding that Mr. Kosoglad sufficiently demonstrated that his hourly rate for civil rights work was $400 per hour. *Id*. at 4, ¶10. Nothing in either affidavit indicates that the affiants ever received $550 per hour for work on civil rights matters. To the extent these attorneys merely opine on the reasonableness of the rates claimed by

---

[4] Another court in this district has similarly disregarded this report when Plaintiff's counsel sought to use the report to justify Shiller Preyar's attorneys' fees in another case. *Cavada*, 2014 WL 4124273, at *3 ("The context for the rate analysis is specific to that case—namely, the complex nature of the litigation, the representation of the class plaintiffs, the litigation strategy, and the high quality of work product submitted by the * * * attorneys in litigating that matter.").

Plaintiff's counsel, the Court finds these affidavits unpersuasive. *Montanez*, 755 F.3d at 554 (holding that district court properly disregarded "affidavits from other Chicago attorneys, which only attested that [plaintiff's] lawyers were well qualified and that their fees were reasonable"). These affidavits therefore fail to establish Mr. Shiller's claimed rate of $550 per hour for civil rights cases.

Because Plaintiff fails to meet his burden of proving Mr. Shiller's market rate of $550 per hour for work on civil rights cases, it is up to the Court to make its own determination of a reasonable hourly rate. *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999). The Court notes that there is not a high evidentiary bar for establishing the market rate for an attorney's work. *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1311 (7th Cir. 1996). Still, Plaintiff here has not submitted sufficient evidence to overcome even this low hurdle.

Defendants argue that the market rate for the work Mr. Shiller performed in this case should be $385, the rate set in a case affirmed by the Seventh Circuit for work performed by Mr. Shiller from 2009 through 2011. [90, at 28 (citing *Montanez*, 931 F. Supp. 2d at 878).] Defendants further cite to *Cavada v. City of Chicago*, in which a court again awarded Mr. Shiller a rate of $385 per hour based on the Seventh Circuit's affirmance of this rate a year earlier. 2014 WL 4124273, at *3 (N.D. Ill. Aug. 18, 2014).

Defendants would have the Court find that Mr. Shiller's hourly rate has not increased at all since 2009. This position is untenable. "[H]ourly fees often increase over time, both because of inflation and because of the increasing skill and reputation of the attorney." *Fox ex rel.*, 2013 WL 4401802, at *3. Still, $550 per hour for the work Mr. Shiller performed in this case seems excessive, especially in light of fees awarded to other attorneys in the civil rights field. A recent

decision from another court in this district awarded an attorney who had worked on civil rights cases for approximately the same amount of time as Mr. Shiller $465 per hour for her work on a § 1983 case.[5] *Bellamy v. City of Chicago*, 2017 WL 3675729, at *3 (N.D. Ill. Aug. 25, 2017) (awarding attorney with 14 years of experience working on civil rights cases $465 per hour). A 2013 decision from another court in this district awarded a more experienced attorney Jon Loevy $505 per hour. *Fox ex rel. Fox*, 2013 WL 4401802, at *2; see also *Wells v. City of Chicago*, 925 F.Supp.2d 1036, 1041, 2013 WL 622942, at *4 (N.D. Ill. Feb. 20, 2013) (describing Jon Loevy as "an attorney whose experience, skill, and record of success in representing plaintiffs in police misconduct cases place him at the apex of attorneys who practice in that field"); *Blackwell v. Kalinowski*, 2012 WL 469962, at *3 (N.D .Ill. Feb. 13, 2012) (describing Mr. Loevy's education, recognitions, and years of successful trial work, including 12 separate jury verdicts of $1 million or more).

Taking into account the prior fee awards, which were years ago, and the hourly rate awarded to other civil rights attorneys, the Court finds that the market rate for Mr. Shiller's work in this case is $465 per hour.

### ii.    Mary Grieb's Hourly Rate

The Court finds that Plaintiff also fails to establish that $350 per hour is the market rate for the work Ms. Grieb performed in this case. To the extent Plaintiff relies on the same evidence submitted in support of Mr. Shiller's hourly rate to establish Ms. Grieb's hourly rate, the Court finds the evidence insufficient for the reasons discussed above.

---

[5] Although Plaintiff did not submit an affidavit from Mr. Shiller discussing his qualifications, Mr. Shiller's qualifications were discussed in other cases involving fee awards for work performed by Mr. Shiller. Defendants have cited these cases throughout their briefing and have had the opportunity to discuss Mr. Shiller's qualifications, as set forth in those cases.

In support of the $350 hourly rate for the work Ms. Grieb performed in this case, however, Plaintiff did submit the affidavit of Ms. Grieb outlining her qualifications and her extensive work on § 1983 cases.   [72-15.]   Ms. Grieb's affidavit avers that "there was an agreed upon fee petition for $68,485 that was derived from applying a $300 rate for work" Ms. Grieb performed in 2014 in the case of *Liera v. City of Chicago, et al.*.   [72-15, at 3 ¶ 9.]   Her affidavit further avers that "there was an agreed upon fee petition for $49,998.55 that was derived from applying a $350 rate for" work Ms. Grieb performed in 2015 and 2016 in the case of *McCadd v. Village of Bolingbrook*. [72-15, at 3 ¶ 10.]   Although "a previous attorneys' fee award is useful for establishing a reasonable market rate for similar work whether it is disputed or not," *Pickett*, 664 F.3d at 647 (quoting *Jeffboat, LLC, v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 491 (7th Cir. 2009)), Plaintiff does not provide any evidence—other than Ms. Grieb's affidavit—of these prior fee awards.   Because Plaintiff fails to attach documents supporting counsel's assertions regarding these agreed upon fee petitions, the Court is unable to determine whether these fee petitions specifically addressed Ms. Grieb's hourly rate, as opposed to agreeing generally to an overall fee amount.   Thus, the Court finds that Ms. Grieb's general statements regarding prior fee awards do not establish the $350 per hour rate for the work she performed in this case.   *Montanez*, 931 F. Supp. 2d at 878 (concluding that prior fee settlements failed to support hourly rate requested by Ms. Grieb, where there was no evidence that the defendant "agreed to Ms. Grieb's rate, as opposed to agreeing generally to an overall fee amount").

Citing to the *Montanez* and *Cavada* cases discussed above, Defendants argue that the market rate for the services provided by Ms. Grieb in this case should be $175 per hour.   Again, the Court finds Defendant's contention that Ms. Grieb's hourly rate has not increased at all since 2011—one year after she graduated law school—untenable.   Furthermore, the affidavit of Jared

S. Kosoglad indicates that he was awarded $400 per hour for his work on a civil rights case when Mr. Kosoglad was slightly more experienced than Ms. Grieb, supporting Plaintiff's contention that Ms. Grieb should be awarded more than $185 per hour. [72-15, at 4 ¶ 10.] Another court in this district has recently concluded that the hourly rate for a similarly experienced attorney would be at least $250. *Bellamy*, 2017 WL 3675729, at *5 (awarding the requested $250 per hour rate for work performed by a civil rights attorney practicing since 2010, but recognizing that the reasonable hourly rate for the attorney's work might be even higher).

Considering the prior fee awards and the hourly rates awarded to other attorneys, the Court finds that the market rate for Ms. Grieb's work in this case is $300 per hour.

### 2. Number of Hours

Once a reasonable hourly rate is determined, the Court must then analyze the number of hours reasonably expended. *Hensley*, 461 U.S. at 433. Here, Defendants argue that the court should reduce the number of recoverable hours for time entries that are (1) vague or insufficiently documented, (2) excessive, redundant, or unnecessary, (3) administrative or better suited for support staff, and/or (4) internal or duplicative. As discussed below, the Court finds that some of Defendants' objections to the hours claimed by Plaintiff's attorneys are meritorious.

### i. Vague or Insufficient Documentation

Defendants contend that certain entries are too vague to merit an award of attorneys' fees. "[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000); see also *Ohio–Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 651, 657–58 (7th Cir. 1985). "The district court has broad discretion to

strike * * * vague or unjustified billing entries." *Montanez*, 755 F.3d at 555–56. The relevant inquiry is "whether the time entries are 'sufficiently detailed to permit the Court to determine whether the hours expended were reasonable and necessary to the conduct of the litigation.'" *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 986 (N.D. Ill. 2012) (quoting *Crispin R., Jr. v. Bd. of Educ. of the City of Chi., Dist. 299,* 2010 WL 3701328, at *6 (N.D. Ill. Sept. 10, 2010)). After reviewing Defendants' objections chart, the Court finds that Ms. Grieb billed for 5 hours of work and paralegals billed for 1.1 hours of work without adequately describing the work billed. Descriptions such as "draft LTR to client," without more, do not adequately describe the work performed. With such vague descriptions, the Court is unable to determine whether the time spent on these tasks was reasonable and necessary to the conduct of the litigation. *Montanez*, 755 F.3d at 555–56 (affirming district court decision rejecting vague billing entries, such as "call to client"). The Court will therefore deduct 5 hours from Ms. Grieb's recoverable hours and 1.1 hours from the paralegals' recoverable hours, as shown in the charts below.

***Vague Entries for Mary Grieb***

| Date | Description | Time |
|------|-------------|------|
| 5/21/2015 | draft LTR to client | 0.3 |
| 6/04/2015 | draft LTR to client | 0.3 |
| 6/09/2015 | read Ltr from client | 0.8 |
| 6/10/2015 | draft LTR to Law Dept | 0.3 |
| 6/19/2015 | read LTR from client | 0.3 |
| 6/19/2015 | read letter from Pltft | 0.1 |
| 6/22/2015 | read LTR from Tom Platt | 0.2 |
| 6/24/2015 | draft LTR to client | 0.3 |
| 8/12/2015 | read LTR from client | 0.3 |
| 8/14/2015 | read Ltr from client | 0.2 |
| 8/20/2015 | attempt to contact porter | 0.3 |
| 8/20/2015 | attempt to contact carter | 0.2 |
| 8/20/2015 | attempt to contact huddleston | 0.2 |
| 8/20/2015 | attempt to contact baker | 0.2 |
| 8/25/2015 | draft LTR to client | 0.2 |
| 8/25/2015 | spoke to Pltf grandma | 0.2 |

| 12/18/2015 | draft LTR to client | 0.3 |
| 3/28/2016 | draft LTR to J. Dow | 0.1 |
| 4/29/2016 | drafted email to Moore | 0.2 |
| | **Total** | **5.0** |

***Vague Entries for Paralegals***

| Date | Description | Time |
|---|---|---|
| 5/20/2015 | draft LTR to J. Dow | 0.1 |
| 6/10/2015 | draft LTR to J. Dow | 0.1 |
| 6/18/2015 | draft LTR to J. Dow | 0.1 |
| 6/26/2015 | draft LTR to J. Dow | 0.1 |
| 8/24/2015 | draft LTR to J. Dow | 0.2 |
| 8/27/2015 | draft LTR to J. Dow | 0.1 |
| 10/15/2015 | draft LTR to J. Dow | 0.1 |
| 11/03/2015 | draft LTR to J. Dow | 0.1 |
| 11/03/2015 | draft LTR to J. Dow | 0.2 |
| | **Total** | **1.1** |

## ii. Excessive, Redundant, or Unnecessary

Defendants also argue that billing entries that are excessive, redundant, or unnecessary should be deducted. "In determining the reasonable number of hours, [a] court should exclude hours that are 'excessive, redundant or otherwise unnecessary.'" *Small*, 264 F.3d at 708 (quoting *Hensley*, 461 U.S. at 434). "In exercising this discretion, the court may properly rely on its own experience to estimate the time reasonably required for the work claimed." *Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605, 607 (7th Cir. 1982) (citing *Boe v. Colello*, 447 F. Supp. 607, 610 (S.D.N.Y. 1978)).

In this case, the Court agrees that hours should be deducted from Plaintiff's attorneys' fees claim for work that was excessive, redundant, and/or unnecessary. First, Ms. Grieb spent 15.2 hours reviewing A&A sheets and compiling a list of possible wrongdoers. Ms. Grieb spent an additional 12.6 hours conducting Google searches of on-duty detectives. Plaintiff's reply brief indicates that Ms. Grieb was only able to eliminate one detective as being the unnamed defendant

from this search process.    [91, at 7 n. 3.]    The Court recognizes that Plaintiff needed to take steps to identify the correct defendant to name in the lawsuit, but finds that there were more efficient ways of doing so.    For example, instead of spending 12.6 hours conducting Google searches of on-duty detectives, Plaintiff could have requested photographs of the detectives identified from the A&A sheets.    Indeed, in plaintiff's motion to conduct expedited discovery, Plaintiff indicated that he would "seek photographs of certain individual officers or detectives, based on his review of the reports and review of attendance and assignment sheets."    [13, at 3, §11.]    But it appears Plaintiff never did so.    Given that it was both inefficient and ineffective to spend 12.6 hours conducting Google searches of detectives, these hours should be deducted from the hours claimed for Ms. Grieb.    Although it was appropriate for Plaintiff to review A&A sheets to compile a list of possible wrongdoers, spending 15.2 hours doing so was also excessive.    The court therefore will deduct an additional 10.2 hours from the time claimed by Ms. Grieb.

Second, Ms. Grieb also claimed 1.5 hours for attending court on 5 occasions.    Defendants challenges these entries, representing that these hearings only lasted for approximately 0.5 hours. Plaintiff did not respond to Defendants' arguments with respect to these entries.    And the Court finds that 1.5 hours for a status hearing seems excessive.    Accordingly, the Court will adjust these entries to limit the time recovered for these court appearances to 1.0 hour, accounting for time appearing at the status hearing as well as time traveling to and from the status hearing.    This results in deducting 2.5 hours from the time claimed by Ms. Grieb.

Third, Ms. Grieb spent 3.8 hours reading arrest reports and clerk files for possible witnesses.    She also spent 0.9 hours attempting to contact these individuals.    Defendants challenged these entries as excessive, redundant, or unnecessary.    The Court recognizes that it is prudent for attorneys to contact potential witnesses.    The large amount of time spent reviewing

arrest reports and clerk files for three witnesses that have not even been contacted yet, however, seems excessive. Accordingly, the Court will deduct 1.8 hours from the time claimed by Ms. Grieb.

Fourth, Ms. Grieb spent 0.8 hours reading a 2-page offer of judgment. Again, this is excessive, and the Court will deduct 0.5 hours from the time claimed by Ms. Grieb.

Finally, Defendants generally challenges Plaintiff's use of billing increments of 0.1 of an hour (six minutes) for emailing. [90, at 23.] For example, Ms. Grieb logged 0.1 hours for writing a two-line email.[6] These kinds of entries result in excessive billing. *Taylor v. Law Offices of Vincent Peter Cignarale, LLC*, 2011 WL 6102020, at *2 (N.D. Ill. Dec. 5, 2011) (reducing by two-thirds fees billed in 0.1–hour increments for email review). The Court estimates that Ms. Grieb seeks to recover attorney's fees for approximately 6 hours for short email correspondence billed in 0.1 hour increments.[7] The Court will reduce by two-thirds the time Ms. Grieb billed for email review in 0.1 hour increments, and will therefore deduct 4 hours from the time claimed by Ms. Grieb. In sum, the Court is deducting a total of 31.6 hours for excessive, redundant, or unnecessary work performed by Ms. Grieb.

### iii. Administrative or Better Suited for Support Staff

Defendants also ask the Court to deduct entries that are administrative in nature or better suited for support staff. Parties cannot recover attorneys' fees or paralegals' fees for tasks that

---

[6] Ms. Grieb also logged 0.8 hours in 0.1 hour increments for reading minute entries or other short documents on the docket. And she logged 0.5 hours in 0.1 hour increments for reading one page attorney appearances. These entries also seem excessive. *Smith v. Altman*, 2015 WL 5675376, at *9 (N.D. Ill. Sept. 21, 2015) ("The Court agrees review of orders is compensable; however, billing in six minute increments for the review of a single minute order is excessive."). Because Defendants have not challenged these entries, however, the Court will not strike or adjust the time allowed for these entries.

[7] The Court did not include email communications that were billed at 0.2 hours or more, as there is less risk that time entries of 0.2 hours or more will lead to excessive billing.

can be delegated to a non-professional. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999); *Delgado v. Vill. of Rosemont*, 2006 WL 3147695, at *2 (N.D. Ill. Oct.31, 2006); *Morjal v. City of Chicago, Ill.*, 2013 WL 2368062, at *2 (N.D. Ill. May 29, 2013) ("[T]ime spent organizing file folders, preparing document[s], assembling filings, electronically filing documents, sending materials, docketing or logging case events into an internal case tracking system, and telephoning court reporters is noncompensable." (internal quotations omitted)).

Here, Plaintiff seeks to recover 4.6 hours in attorney's fees for time Ms. Grieb spent producing records and organizing and compiling documents and exhibits. Plaintiff also seek to recover 2.9 hours in paralegals' fees for downloading documents, scanning documents, filing documents, and labeling files. Because these tasks are administrative in nature and could be assigned to a nonprofessional, the Court will deduct 4.6 hours from Ms. Grieb's recoverable hours and 2.9 hours from the paralegals recoverable hours.

*Administrative Tasks Performed by Mary Grieb*

| Date | Description | Time |
|------|-------------|------|
| 9/10/21015 | compile 26as documents | 3.4 |
| 9/17/2015 | sent Moore demand ltr | 0.1 |
| 5/8/2016 | organized exhibits for O'Brien deposition | 0.8 |
| 5/17/2016 | produce Cermak records | 0.3 |
| | **Total** | **4.6** |

*Administrative Tasks Performed by Paralegals*

| Date | Description | Time |
|------|-------------|------|
| 5/15/2015 | download PACER filings | 1.0 |
| 6/25/2015 | scan executed summons | 0.2 |
| 8/14/2015 | scan and label Clerks file | 1.2 |
| 6/2/2016 | scan and file supp production | 0.5 |
| | **Total** | **2.9** |

Although Defendants identified additional entries as administrative in nature, the Court finds that it was reasonable not to delegate these tasks to a non-professional. For example, it is

appropriate for a paralegal to handle filing documents instead of a non-professional.   See, *e.g.,*
*Williams v. Z.D. Masonry, Corp.*, 2009 WL 383614, at *5 (N.D. Ill. Feb. 17, 2009) ("In light of the
problems that can result from a botched electronic filing, the court will not second-guess the firm's
decision that such filing must be overseen by a paralegal.").

### iv.    Internal or Duplicative

Defendants also object to duplicative entries by both Ms. Grieb and Mr. Shiller for various
meetings and discussions involving both attorneys.   In challenging these entries, Defendants cite
to a case that held it was excessive for two partners to perform the same tasks throughout the
course of a lawsuit.   *Montanez*, 931 F. Supp. 2d at 880.   Here, however, Defendants challenge
entries involving one associate and one partner.   It was not unreasonable or inappropriate for an
associate to consult a partner regarding important matters in the case.   *Mostly Memories, Inc. v.
For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 935 (N.D. Ill. 2009) ("[T]ime spent discussing
issues with other attorneys is a basic element of the practice of law and is compensable, if
reasonable, in a fee petition." (citing *Berberena v. Coler*, 753 F.2d 629, 633 (7th Cir. 1985))).

Defendants also object to 2.3 hours Mr. Shiller spent reading Detective Ford's deposition.
Given Mr. Shiller's advisory role on the case, and given the fact that Ms. Grieb spent 2.2 hours that
same day abstracting Detective Ford's deposition, the Court agrees that this duplicative entry is
unreasonable.   Accordingly, 2.3 hours will be deducted from Mr. Shiller's recoverable hours.

Based on the hourly rates and total hours after making the adjustments discussed above, the
lodestar is $64,462.50.

| Attorney/Paralegal | Total Adjusted Hours | Adjusted Rate | Adjusted Fees |
|---|---|---|---|
| Mary J. Grieb | 193.2 | $300 | $57,960.00 |
| Brendan Shiller | 12.5 | $465 | $5,812.50 |
| Paralegals | 9.2 | $75/hour | $690.00 |
| | | **Total** | **$64,462.50** |

iv. Fees on Fees

Plaintiff recognizes "that the language of the offer of judgment does not explicitly allow for fees on fees." [96, at 11.] Specifically, the offer of judgment provides that Plaintiff is entitled to "reasonable attorney's fees and costs accrued as of **June 7, 2016**, in an amount to be determined by the Court." [63, at 1.] A plaintiff who accepts an offer of judgment cutting off attorneys' fees incurred after a certain date cannot recover fees on fees occurring after the agreed upon date, unless the fees on fees are incurred "responding to frivolous arguments." *World Outreach Conference Ctr. v. City of Chicago*, 234 F. Supp. 3d 904, 917–18 (N.D. Ill. 2017) (citing *Morjal v. City of Chi.*, 774 F.3d 419, 422–23 (7th Cir. 2014)); see also *Stephens v. Cirrincione*, 2012 WL 2872448, at *3 (N.D. Ill. July 11, 2012) ("When an offer of judgment unambiguously limits recovery of attorney's fees, courts should honor that limitation." (citing *Decker v. Transworld Sys., Inc.*, 2009 WL 2916819, at *2 (N.D. Ill. Sept.1, 2009))). Nonetheless, Plaintiff argues that he is entitled to fees on fees because (1) Defendants raised frivolous arguments necessitating litigation on the amount of recoverable fees, and (2) fee shifting statutes allow the prevailing party to recover fees on fees.

With respect to the first argument, Defendants' arguments were not frivolous. In their opening supplemental brief, Defendants abandon their argument that the PLRA fee cap should limit the amount of attorneys' fees Plaintiff can recover, not wishing to maintain the position that the PLRA fee cap and hourly rate apply where—as here—the claim does not involve "prison conditions" because the plaintiff was an arrestee as opposed to a prisoner. Plaintiff contends that Defendants decision to abandon its argument that PLRA applies demonstrates that Defendants' arguments were frivolous. However, Plaintiff's opening supplemental brief recognizes that there

is a circuit split regarding whether the PLRA fee cap and hourly rate cap apply where the claim does not involve "prison conditions." [96 at 1 ("Whether the PLRA fee cap and hourly rate apply where the claim does not involve "prison conditions" appears to be an open question in this district and circuit.").] Even though Defendants abandoned this argument, Plaintiff's own briefing demonstrates this argument was not frivolous.

Plaintiff also contends that Defendants' frivolously argued that the PLRA fee cap is not an affirmative defense that can be waived. But Plaintiff has not cited—and this Court has not found—any case supporting the proposition that the PLRA fee cap is itself an affirmative defense that must be plead or is waived. Instead, Plaintiff cites cases recognizing that the PLRA's exhaustion requirement is an affirmative defense that must be plead or waived. Although an argument can be considered frivolous even when there is no case directly on point, the Court finds that Defendants' contention that the PLRA fee cap is not itself an affirmative defense was made in good faith and was not frivolous.[8]

With respect to the second argument, Plaintiff is bound by the express terms of the offer of judgment, regardless of whether an otherwise applicable fee shifting statute generally allows for the recovery of fees on fees. *Cavada*, 2014 WL 4124273, at *5 ("By accepting [the] unambiguous Rule 68 offer, Plaintiffs waived any attorneys' fees incurred after August 30, 2013, including the fees incurred in litigating their fee petition."). As Plaintiff himself repeatedly has argued, the parties are bound by the express terms of the offer of judgment. Having agreed to limit attorneys' fees and costs to those "accrued as of June 7, 2016," Plaintiff cannot now claim

---

[8] Indeed, the Seventh Circuit has recognized that it is unsettled whether a damages cap constitutes an affirmative defense. *Carter v. United States*, 333 F.3d 791, 796 (7th Cir. 2003). It is no clearer whether the PLRA's hourly rate cap and fee cap constitute affirmative defenses.

that he is nonetheless entitled to the benefit of a fee shifting statute that would allow him to recover fees accrued after that date.   Thus, the Court denies Plaintiff's request for fees on fees.

### B.   Costs

Plaintiff's bill of costs seeks $1,215.70 in taxable costs.   [68.]   Defendants agree that Plaintiff is entitled to recover $931.70 in taxable costs for two deposition transcripts and $50.00 in taxable costs for a service of summons.   [70, at 1.]   Defendants contend, however, that Plaintiff is not entitled to recover the remaining $234 in taxable costs Plaintiff seeks for exemplification and copying of 2,340 pages at a rate of $0.10 per page, arguing that Plaintiff fails to provide any supporting invoices or sufficient descriptions of these costs.

Under 28 U.S.C. § 1920(4), a court may tax as costs "the costs of making copies of any materials where the copies are necessarily obtained for use in the case."   Even when costs are permitted by statute, the "cost must be both reasonable and necessary to the litigation." *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008); see also *Warfield v. City of Chicago*, 733 F. Supp. 2d 950, 955 (N.D. Ill. 2010) (requiring costs under § 1988 to be both "reasonable and necessary").   Courts interpret this section to mean that photocopying charges for discovery and court copies are recoverable, but charges for copies made for attorney convenience are not.   See *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000); *McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990).   The party seeking reimbursement "[m]ust provide the best breakdown obtainable from retained records * * * and certainly enough information to allow the court to make a determination that the costs sought are, in fact, authorized by § 1920." *Autozone, Inc. v. Strick*, 2010 WL 2365523, at *2 (N.D. Ill. June 9, 2010) (internal quotations omitted).   "The court cannot award [the prevailing party's] copying costs without some confidence that the costs are properly recoverable." *Fait v. Hummel*, 2002

WL 31433424, at *5 (N.D. Ill. Oct.30, 2002). However, it is not necessary "to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs." *Northbrook Excess & Surplus Ins. Co. v. Proctor & Gamble,* 924 F.2d 633, 643 (7th Cir. 1991).

Here, Plaintiff has not provided sufficient detail for the Court to determine with any confidence that the exemplification and copying costs he seeks are properly recoverable. It is not enough to identify the copies as "file copies" or "research copies" as Plaintiff has done. See, *e.g., Lally v. City of Chicago*, 2013 WL 1984422, at *12 (N.D. Ill. May 13, 2013) (holding party could not recover exemplification and copying costs identified only as "[c]opies and printing for trial prep"). Thus, the Court finds Plaintiff only is entitled to recover $981.70 in taxable costs.

Plaintiff seeks an additional $986.70 in nontaxable litigation expenses under § 1988.[9] [72, at 18-19.] "[E]xpenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in his hourly billing rates—expenses for such things as postage, long-distance calls, xeroxing, travel, paralegals, and expert witnesses—are part of the reasonable attorney's fee allowed by the Civil Rights Attorney's Fees Awards Act." *Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1144 (7th Cir. 1994) (quoting *Heiar v. Crawford Cty., Wis.*, 746 F.2d 1190, 1203 (7th Cir. 1984)). Defendants do not challenge any of these claimed litigation expenses, but object generally to any expenses not listed on Plaintiff's bill of costs. [90, at 31.] Rule 54 provides, however, that a "claim for attorney's fees and related nontaxable expenses must be made by motion." Fed. R. Civ. P. 54(d)(2)(A). Plaintiff therefore properly excluded these expenses from his bill of costs and sought to recover these expenses in a separate motion for

_____

[9] Plaintiff's brief indicates that he is seeking an additional $988.70 in litigation expenses pursuant to § 1988. [72-1, at 19.] The supporting documents, however, show that Plaintiff is seeking $986.70 in additional costs. [72-3, at 1-2.] Because the Plaintiff's supporting documents only show an additional $986.70 in claimed litigation expenses, the Court is using that number.

25

attorneys' fee. *Thornton v. St. Anne Home of the Diocese of Fort Wayne-S. Bend Inc.*, 2011 WL 4732848, at *3 (N.D. Ind. Oct. 3, 2011) (holding that it was improper to include nontaxable costs in bill of costs, as such costs must be sought through a separate motion).

Here, Plaintiff is requesting compensation for expenses such as postage and travel, which are recoverable nontaxable costs. Furthermore, Plaintiff has provided documentation for his claimed nontaxable costs. [72-3.] Other than objecting generally to Plaintiff's request for costs other than those included in Plaintiff's bill of costs, Defendants have not objected to any of Plaintiff's claimed nontaxable expenses. Accordingly, the Court awards Plaintiff $986.70 in non-taxable litigation expenses.

### C.    Sanctions

In the alternative to Plaintiff's request for attorneys' fees pursuant to Rule 68 and § 1988, Plaintiff argues that he is entitled to his attorneys' fees as a sanction for "Defendants' failure to produce the TRR until June 2, 2016." [72-1, at 19.] Specifically, Plaintiff argues that "[s]anctions are appropriate under Rule[s] 26 and 37, as well as under 28 U.S.C. §1927 and the Court's inherent authority." [72-1, at 23.]

#### i. Rule 26(g)

To the extent Plaintiff seeks sanctions under Rule 26(g), Plaintiff has not shown that defense counsel knowingly certified inaccurate or incomplete discovery responses. Rule 26(g)(3) mandates "the imposition of sanctions where a party knowingly certifies inaccurate or incomplete discovery responses without substantial justification." *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 188 F. Supp. 3d 776, 789 (N.D. Ill. 2016) (citing Fed. R. Civ. P. 26(g)(3)). Rule 26(g)(3) sanctions are not appropriate where the attorney made a reasonably inquiry and reasonably relied on information provided to the attorney. See, *e.g.*,

*Davis v. Lakeside Motor Co.*, 2014 WL 3341033, at *5 (N.D. Ind. July 7, 2014) (holding Rule 26(g) sanctions were inappropriate where attorney relied on representation of client); Fed. R. Civ. P. 26 advisory committee notes (1983) ("In making the inquiry, the attorney may rely on assertions by the client * * * as long as that reliance is appropriate under the circumstances.").

Here, Defendants' briefing explains that the TRR was not produced as a result of a misunderstanding regarding the correct event identification number associated with the incident between Plaintiff and Ford. [90, at 5.] Furthermore, Defendants' response brief attaches a record of the initial TRR search that came back negative, showing that Defendants in fact conducted a search for the TRR on July 6, 2015. [90-6.] Given the facts before the Court, there is no indication that defense counsel knowingly certified inaccurate or incomplete discovery responses. Indeed, in Plaintiff's reply brief, he makes clear that he is attributing the failure to produce the TRR before June 2, 2016 to the City of Chicago, not defense counsel. Plaintiff recognizes that "[i]t is possible, even likely, that the ACCs assigned to this case did nothing wrong at all, and simply took the word of either their point of contact at the [Office of Legal Affairs] or one of the defendant officers." [91, at 12.] The Court therefore finds no basis for imposing sanctions under Rule 26(g)(3).

## ii.    *Section 1927*

Nor does the Court find any basis for imposing sanctions under §1927.[10] "Section 1927 authorizes sanctions against lawyers who needlessly multiply the proceedings." *Rojas v. Town of Cicero*, 775 F.3d 906, 908 (7th Cir. 2015). "Section 1927 clearly is punitive and thus must be construed strictly." *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226 (7th Cir. 1984) (citing

_____

[10] The Court notes that Plaintiff fails to develop his argument that sanctions are appropriate under §1927. Although Plaintiff references §1927 twice in his brief, [72-1, at 1, 23], but Plaintiff does no more. He does not discuss the appropriate legal standard for imposing sanctions under §1927. Nor does he apply that legal standard to the facts of this case.

*Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160, 1166 (7th Cir. 1983)). It is within the discretion of the Court to order sanctions under §1927. *Id.* Here, Plaintiff has not established that defense counsel needlessly multiplied the proceedings. To the contrary, as discussed above, Plaintiff recognizes that it is possible or even likely that defense counsel "did nothing wrong at all." The Court therefore finds no basis for imposing sanctions under §1927.

### iii. Court's Inherent Authority

Similarly, the Court finds no basis for imposing sanctions pursuant to the court's inherent authority. "Any sanctions imposed pursuant to the court's inherent authority must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) (citations omitted). Thus, in order to sanction a party for failing to produce a document pursuant to the court's inherent authority, the court must find that the party willfully withheld the document. *Maynard v. Nygren*, 332 F.3d 462, 471 (7th Cir. 2003), overruled on other grounds by *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772 (7th Cir. 2016). Even negligent mishandling of a document is not enough. *Id.* ("There is no authority under the Rules or under the inherent powers of the court to sanction attorneys for mere negligence."). Here, there is no indication that Defendants willfully withheld the TRR. Thus, the Court does not find that Defendants willfully abused the judicial process or otherwise acted in bad faith and will not sanction Defendants pursuant to the inherent authority of the court.

### iv. Rules 26(e) and 37(c)

Finally, to the extent Plaintiff seeks attorneys' fees as a sanction under Rules 26(e) and 37(c),[11] the Court finds that Plaintiff's request is moot in light of the fact that the Court is already

---

[11] Again, the Court notes that Plaintiff fails to develop any argument that sanctions are appropriate under

awarding Plaintiff his reasonable attorneys' fees pursuant to the terms of the offer of judgment. *Trustees of Teamsters Union Local 142 Pension Tr. Fund v. JGM Enterprises, Inc.*, 2007 WL 489226, at *6 (N.D. Ind. Feb. 8, 2007) (denying motion for sanctions under Rule 37(c) and (d) where the relief requested in the motion for sanctions was rendered moot as a result of the court's summary judgment ruling); see also *United States v. Alacran Contracting, LLC*, 2015 WL 5829710, at *3 (N.D. Ill. Oct. 5, 2015) (recognizing that motion for sanctions under Rule 37(c) was rendered moot where court found an alternative ground for granting the relief requested). Furthermore, because Plaintiff moved for sanctions nearly two months after the Court entered judgment in this case, the Court finds that Plaintiff's request for sanctions under Rules 26(e) and 37(c) is untimely. Rule 26(e) provides:

> A party * * * who has responded to [a] * * * request for production * * * must supplement or correct its * * * response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Fed. R. Civ. P. 26(e). Under Rule 26(e) an attorney is obligated to supplement its disclosures and discover responses as soon as the party "or its counsel knew or should have known that its disclosures were incomplete." *Reddick v. Bloomingdale Police Officers*, 2003 WL 1733560, at *10 (N.D. Ill. Apr. 1, 2003). If a court finds that a party violated rule 26(e), the court may impose appropriate sanctions under Rule 37(c)(1). "Rule 37(c) expenses and fees must be timely sought prior to judgment and appeal, and that if the judgment is silent in regard thereto, they are deemed

---

Rules 26(e) and 37(c). In fact, Plaintiff never even references Rule 26(e) or Rule 37(c). Instead, Plaintiff generally asserts that "[s]anctions are appropriate under Rules 26 and 37." [72-1, at 23.] Plaintiff's only reference to specific provision of Rule 26 is his reference to Rule 26(g), which has its own sanctions provision. Fed. R. Civ. P. 26(g)(3). Although Plaintiff goes on to reference severe sanctions under Rule 37, Plaintiff does not specify which provision of Rule 37 his argument relies upon. The Court is left to speculate regarding the legal authority Plaintiff is relying upon in his request for sanctions. However, it is not the duty of the court to make parties' arguments for them. *Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir. 1995).

waived or denied." *Popeil Bros. v. Schick Elec., Inc.*, 516 F.2d 772, 778 (7th Cir. 1975); see also *Centagon, Inc. v. Bd. of Dirs. of 1212 Lake Shore Drive Condo. Ass'n*, 2002 WL 356483, at *5 (N.D. Ill. Mar. 5, 2002) ("[W]e agree with plaintiffs that a Rule 37 motion for sanctions must be brought, if at all, prior to judgment, and that as a result, defendants' motion must be denied as untimely."). Here, Defendants produced the TRR on June 2, 2016. Plaintiff accepted Defendants' offer of judgment on June 7, 2016 [62], and the Court entered a judgment in Plaintiff's favor on June 15, 2016. [66.] But Plaintiff did not move for sanctions until he filed his petition for attorneys' fees on September 13, 2016. [72-1.] Because Plaintiff moved for sanctions nearly two months after the Court entered judgment in this case, the Court finds that Plaintiff's request for sanctions under Rules 26(e) and 37(c) is untimely.

### D. Prejudgment Interest on Attorneys' Fees

Plaintiff also requests prejudgment interest from August 6, 2016 until the payment of Plaintiff's attorneys' fees. [12] Prejudgment interest is "presumptively available" because "[w]ithout it, compensation is incomplete and the defendant has an incentive to delay." *U.S. v. Bd. of Educ. of Consol. High Sch. Dist. 230, Palos Hills, Ill.*, 983 F.2d 790, 799 (7th Cir. 1993); see also *Ragland v. Ortiz*, 2012 WL 4060310, at *7 (N.D. Ill. Sept. 14, 2012) (awarding prejudgment interest on attorneys' fees); *Cavada*, 2014 WL 4124273, at *6 (same). Here, Defendants do not dispute that Plaintiff is entitled to prejudgment interest on his attorneys' fees. Nor does the Court find any reason to deviate from the presumption that prejudgment interest should be awarded.

---

[12] In the section header on prejudgment interest, Plaintiff also indicates that he is seeking prejudgment interest on costs. Within this section of the brief, however, Plaintiff does not mention costs at all. Nor does Plaintiff cite to any authority discussing the appropriateness of awarding prejudgment interest on costs. Because it is not the duty of the court to make the parties' arguments for them, *Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir. 1995), the Court will not address whether Plaintiff could recover prejudgment interest on costs. *Hicks v. Henman*, 927 F.2d 607 (7th Cir. 1991) (declining to address issue mentioned in argument heading without any argument on the point or any citation to relevant case law).

Here, the accepted offer of judgment provides that "[i]t is an express condition of this offer that any prejudgment interest awarded to Plaintiff by the Court does not begin to accrue until the 60th day following the acceptance of this offer."   [62-1, at 2, ¶5.]   Plaintiff accepted the offer of judgment on June 7, 2016.   Accordingly, the Court awards Plaintiff prejudgment interest on his attorneys' fees from August 6, 2016—60 days after Plaintiff accepted the offer of judgment.   The parties are directed to confer on the appropriate calculations and submit a proposed order incorporating those calculations by the deadline set below.

* * * * *

In closing, the Court cannot help but observe that the attorney's fee dispute in this case—which ended on the merits with an accepted Rule 68 offer of judgment—has ironically run contrary to the purposes of the rule, which was promulgated "to encourage settlements and avoid protracted litigation."   See Advisory Committee Notes to 1946 Amendment to Federal Rule of Civil Procedure 68; see also Fed. R. Civ. P. 1 (stressing that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). In hindsight, it is hard to imagine that the parties could not have reached a less expensive and more satisfying result by attempting to negotiate their fee dispute, rather than leaving it to the litigation process by agreeing amorphously to a payment of "reasonable attorney's fees and costs * * * in an amount to be determined by the Court."   As noted above, judges do not have the option of "eyeballing" to reach a reasonable result.   Instead, judges are obligated to reach the result consistent with the law and will do what they deem necessary—including (however reluctantly) ordering supplemental briefing—to accomplish that objective.

## III.     Conclusion

For the foregoing reasons, the Court awards Plaintiff $64,462.50 in attorneys' fees, plus prejudgment interest from August 6, 2016.   The Court further awards Plaintiff $981.70 in taxable costs and $986.70 in nontaxable costs.   The Court denies Plaintiff's request for sanctions.   The parties are directed to confer regarding the appropriate calculation of prejudgment interest and submit a proposed order incorporating that calculation along with the other amounts stated above no later than December 20, 2017.

Dated:   December 11, 2017

_____
Robert M. Dow, Jr.
United States District Judge